Good morning. May it please the Court, my name is Jim Jollison. I represent former City Judge Darcy Downs-Vollbracht. I'd like to reserve five minutes for rebuttal in this case. As we look at the record of this case, both the record that was developed in the summer judgment as well as the record that was developed at trial in this case, there's one glaring fact or lack of fact that exists. From the moment that Judge Downs-Vollbracht complained that the court remodel project in Bullhead City was illegal, up to the time that she was fired, she went through a number of employment actions or experienced a number of employment actions that were horrendous, from being called a backstabber to being accused of abandoning the bench to being accused of lying, ultimately to seeing her hours cut, ultimately to seeing her full-time position withdrawn. Was this all raised in the court below? I'm sorry, Your Honor. Was this all raised in the court below? This was all raised in the court below. And the one interesting and, to my point, the most glaring thing that exists is that in that whole process, which occurred over three or four months, not once did the defendant, Judge Stringer, mention anything about the budget being a part of those decisions. And when it came down to Judge Downs-Vollbracht being fired, Judge Stringer again said nothing about the budget. In fact, she said nothing about the idea of restructuring the court. My point in this case is that the idea of decisions being related to a budget or the idea of decisions being related to some type of policy decision to restructure the court, those types of arguments and those types of positions did not occur until after this became a litigated case. The fact of the matter is that the city council did not adopt a full-time assistant magistrate judge position. Correct? Yes, sir. And that was, they put on evidence anyway, that was at least partly a budgetary question. No, sir. I disagree with that part of it. It's not a policy decision? The city council in this case never decided whether or not to adopt the full-time position. They never addressed it? It was never presented to them. It was never put in the budget that they adopted. There was no full-time position adopted by the city council in the budgeting. And we have all this evidence, you know, about how the city manager or whatever, they present the budget to the city council. So we have to assume the city council is not just a rubber stamp. I mean, city council, after all, that's a pretty high legislative position. So they're not just a rubber stamp. They're looking at this thing and they're seeing where the money is and where there's money for this and money for that. And they don't happen to put money on a full-time magistrate position. And that's why there isn't one at the end of the day. Well, and I want to be real explicit about this. The city council is the legislative body, and I agree with you. They don't just rubber stamp these budget-related decisions. The problem in this case is that Judge Stringer went through the formal legislative process of presenting the full-time magistrate position and did that for some very good and historic reasons. This is a city council that approved $150,000 to create a second courtroom for a second judge. Judge Stringer provided written justification for this full-time position, explaining why it was financially beneficial to the court while it was open. But, you know, that legislative body would probably want to have that second courtroom for the use of the pro tem. And there were a number of them who were using that courtroom, were there not, if indeed it had been billed. And I argue it would have been nice if this legislative body had been given the choice, in other words, if they had been presented the option of deciding whether we want pro tems, whether we want an assistant part-time magistrate, or whether we want a full-time magistrate. But because of what Judge Stringer did here by presenting a formal full-time position in the legislative process but withdrawing it secretly outside of the legislative process, she's acting in a peculiarly non-legislative way. She's actually depriving the city council of the opportunity to consider that position, whether that's actionable or not. Why does, I'm trying to figure out, I mean, your client was dismissed from the part-time position. Yes, sir. And she, I mean, she was never appointed, obviously, to the full-time position because the full-time position was never created. That is also correct. So I'm not entirely sure what the creation or non-creation of the full-time position has to do with your client's case. Well, and I've argued this in the brief, and I'll argue it now. I think that largely it goes to a damage issue. But the district court's focus was on the absolute immunity issue. And as I was about to say, whether the question we're dealing with here is whether it's legislative immunity. Yes. Right. And I am not understanding what the creation or non-creation of this second job has to do with the legislative immunity for what happened to your client during the job that she did have from which she was eventually terminated. We're dealing with it because certainly Judge Sedgwick applied absolute immunity to that decision. And I hope I answered your question, Your Honor. No, you haven't. And I know, and I'm going to try. It's better to just go ahead and answer it. My client was dismissed from the part-time position, a position which, by the way, was approved by the city council, was funded by the city council, was not eliminated, and that's undisputed. I just said that to you. So if we go on to have our wrongful termination case and we go in front of a jury and say she should have, she was fired for retaliation, it's not covered by immunity, we want damages for it, my argument at that time is going to be that her damages are based on the full-time position because more likely than not, by a preponderance of the evidence, that position would have been approved, but for Judge Stringer's decision to secretly withdraw that position from consideration by the city council. And we have evidence for that. I mean, it's not speculative. But that's not really before us, is it? I don't believe that it is. At that point, if you wanted to introduce evidence as to the harm suffered from the full-time position, that could be an evidentiary objection. There would be a ruling as to whether that was or was not protected by the legislative privilege. But you've never attempted to introduce this evidence, have you? I never was allowed to. The evidence of... Did you attempt to? Did you attempt to? Well, if you're not allowed to, it means you attempted. Just answer my question. So can I understand, what evidence are we talking about specifically? Evidence as to the creation or the failure to create the permanent position. Evidence was presented in the course of the summary judgment proceedings on that. The judge applied absolute immunity. Never got to whether or not it's a damage issue or an accident. So accusing the passive was presented by whom? By me. Okay. And so you presented it under what theory? Under the theory that I described, Your Honor, that the withdrawal of the full-time position would have eventually been an evidentiary issue on damages and may also have been considered an adverse employment action for purposes of the retaliation. I never got past that basic trial stuff because the judge, Judge Sedgwick, applied absolute immunity, and it was not presented in the summary judgment phase for those purposes. Judge Rosenblatt allowed some of that evidence in during the course of the trial, but, again, not for the purposes that I would have originally used it for if this was a wrongful termination case. And the only reason it wasn't a wrongful termination case is because of the absolute immunity ruling. And, therefore, when we look at the full-time position withdrawal, I'm just really focused on the character of Judge Stringer's actions, and this is what I find particularly disturbing, is that Judge Stringer goes through a legislative process to offer the position but doesn't follow that same legislative process to withdraw it. That's the problem with your whole approach, though, as far as legislative immunity is concerned. Because now, if indeed she had legislative immunity, let's say for the moment, if she had that because it was part of this budgetary process, then her motives and her evil thoughts, et cetera, et cetera, are really irrelevant, are they not? I have to agree with that. That's the law. So the question is, is this process of preparing the budget, if we're there, is this process of preparing the budget and giving it to the legislative body itself part of the legislative process for which one gets immunity, as has been said in some cases where a person's position has actually been eliminated, for example. Was that Bowdoin or was that another case? Where a person is even eliminated by this person who's presenting the budget to the city council to vote on and just eliminated for evil reasons. And it's just too bad, isn't it? We're instructed not to include motive, but I think sometimes people's motives and the way they execute what they're doing will translate to whether or not they follow formal legislative process or whether they observe the traditional hallmarks of legislation. And in this circuit, that's two out of the four factors that the Court considers. Immunity doesn't apply simply because somebody does something connected with the budget. If that were the law, that would be a very easy blanket statement to make. This applies to the creation, non-creation of the permanent position, right? No. You could lose on that. You could lose on that and you still have your claim as to the dismissal from the temporary position. Yes, sir. In fact, we focused on the court part. And if I understand correctly, that was also held to be covered by legislative immunity. Unfortunately, it was. And I don't think there's a single case in the country under facts remotely similar to ours that have come to the same conclusion as Judge Sedgwick. This termination occurred in a letter that said you're just not suited for the job. The position remained. The position was funded and approved by the counsel. And when it comes to full-time, we're not necessarily talking about creating a new position. We're talking about funding a part-time position into a full-time position. And maybe that's semantics, but that's really the practical way it works. You know, the thing about Judge Stringer's ---- If that's really true, then although sometimes part-time people make more money than full-time people, that's another question, but if that's really true, then if indeed there is no legislative immunity for the termination itself, it sounds like you've got most of those, quote, damages, close quote, you're talking about built into that one. I think that then the ---- I've always argued that then the damage case becomes just one effect for the jury. Would the counsel have approved the full-time or would they have not approved the full-time? And I think it's almost, you know, it's beyond contention that the termination without eliminating the position is not covered by absolute immunity. I mean, when we ---- if we're going to follow Beckert, the Beckert case in this circuit, we've got to come to that conclusion. But if I look at Judge Stringer's activities associated with the withdrawal, I could look at this and I could say, hey, a clerk who's involved in the budget process for evil motives wants to just get rid of somebody and in the budget process they just take that person's name out. Are we going to say that that's legislative immunity just because it happens? That's not really the same thing. Here we're talking about someone who is considered to be the final policymaker, at least for her department. We're not talking about a clerk. Being a final policymaker doesn't make you a legislator, and I agree that my example is different than a clerk, but let's also then create another example where it is a manager who does make serious employment decisions and decides for a bad reason that I'm going to get rid of this person. Are we going to create a rule of law, especially that would be promoted under the facts of this case, where they just wait until budget time and they just ---- and, again, not even following their own city's or county's process, they just take the name out of the hat and say, well, it's budget time and I'm a manager. Your name is a position. Well, it ---- But they didn't defund the position here, right? They did not defund the position. They funded the position. They funded the position. And what if they ---- what if instead of firing her, she had just gone to the city council and said defund the position? Then I would have had ---- I think I would have had a harder case if the council had made a decision in this case. They didn't. If the city council followed the legislative process and they hallmarked the legislation, that would have made it a harder case, and I may be focusing on the ad hoc nature of the decision and those other factors. In this case, you don't have any of the factors. Sure you do, because the part of the ---- you're trying to limit it to the city council, but Bogan makes it quite clear that it's not just limited to the city council. It's the people who prepare and submit it, which are, as they said, integral steps in the legislative process. It's the staff that puts it together, and at least on the evidence in this case, the city manager said, I didn't see anything to the contrary of that, look, I told them they weren't going to have any new positions, and they decided then to withdraw it. The point is that's all part between the department heads, the city manager, and the city council. That's all part of doing the budget. Everybody in the city knows that. That's what the budget's about. It's not some clerk striking and ---- I will, because it's a ---- I don't have much time, and it's a complicated answer. I would direct the court to my answering and reply brief at pages 38 to 40, because ---- I know that I'm cutting into my own five-minute reserve. I do want to say something about state law immunity, because I am concerned that the district court judge and defendants have come to an erroneous conclusion, and that is that state court immunity is guided by the same standard as federal court immunity, and in doing so, both the district court judge and the defendants have really sidestepped Arizona law on this point. It is not the same, and it's not even ---- it's, quite frankly, not even close. State law immunity requires legislative decision, not legislative inaction. It requires decisions more than that that deal with entire regulatory schemes and not just implementation of just operational decisions or finite decisions. It rarely applies, and it does not apply in this case. In addition to that, under state law, motive is an issue, and that wasn't considered by the court. Anyway, I would like to reserve my time and ---- Incidentally, the title is district judge. I'm sorry, Your Honor. District judge, not district court judge. Yes, sir. District judge. Thank you. We'll hear from the other side. May it please the Court, I'm Susan Freeman, and I'm appearing on behalf of Judge Stringer. There are two determinations that were legislatively immune. One was the determination not to include a full-time assistant magistrate position in the budget. That position, that determination was legislatively immune. It was part of the budgetary process, as we have been discussing. Well, maybe, but the other one surely wasn't where she fired her. I disagree, Your Honor. Let me make one point first with respect to the budgetary decision, and that is that the testimony with respect to that was allowed in over our order in limine to exclude it, over our objection, and at page 19 of our answer, we quote this evidence. Your client got on the stand and blabbed about it. I'm sorry? Your client got on the stand and blabbed about it. That's how it got in. No. What happened was our client was asked about it after the judge ruled that it should not be asked, that that kind of testimony should not be in. Questions were asked, we objected, and the new district judge overruled and allowed those questions to be asked after we had prepared our case and after we had. Well, that's how it is. Judges differ. Well, it's not just a matter of fact. We understand your evidentiary objection. With respect. I don't think it's going to be dispositive in this case. Why don't you talk about the thing I asked you about? With respect to the termination decision, that termination decision was part and parcel of a decision to eliminate the assistant magistrate as a city position and instead go back to a pro tem position. It wasn't taken out of the budget. It was kept in the budget for another year, and it followed the letter where it said, gee, I can't trust you because you snitched on me. The motivation doesn't matter. The motivation, if you look at the decision in Bogan, you had a determination by a jury already that said this was very much a retaliatory term. The point is, how is it legislative when it's still in the budget? Because being legislative does not depend upon whether something is in the budget or it's not in the budget. She is not a legislator. The only way she gets legislative immunity, if I understand the law, is when she is involved in the legislative process, i.e., for example, preparing the budget that the city council is going to pass on. So it's in the budget. Now tell me how she becomes a legislator when she decides, I'm going to terminate this lady. Because of the very notion of separation of powers. Because with respect to the courts, unlike another kind of department head, the judge here, the presiding judge, is the one who makes the determination about how her department will be structured, whether it will be structured with a city employee or whether it will be structured with pro tem judges who are there from the outside and just come in. Because of the separation of powers, she's a legislator? Is that what you're saying? Absolutely, Your Honor. Okay, thank you. Because with respect to her department, she's the one who makes the decision. Am I going to have pro tems? Am I going to have an employee? So, for example, if somebody in the post office decides to fire an employee and then says, you know, I'm going to use temps instead, temporary employees instead, that's a legislative decision? No. Well, why not? How is this at all different? The reason is that she is the one who is the final decision maker, the policymaker, the legislator when it comes to the courts. You make the decision with respect to the court as the chief judge on how you are, whether you're going to bring in district court judges to assist in hearing cases or whether you are going to rely only upon circuit court judges. District judges, circuit judges. My point is it's the same kind of determination here. The judge, the presiding judge, makes the determination on how her department will be structured, and this determination was all one in the same. I am not going to supervise employees anymore. This has been a disaster. I tried it. This was the first time I tried it as an experiment. I've had pro tems in the past. Now I'm going to try an employee. I understand the frustration. I've supervised employees too. We all have. It can be frustrating, but how is that legislative? How is that different from the frustration that is suffered by any employer who has trouble managing employees? Because we are dealing here with the courts. If the three of us decide, and let's say the court lets us do it, we're going to fire the clerk. So we fire the clerk. That's legislative. Your Honor, here we're talking about how the business. Legislative, I'm asking. We don't want no more stinking clerks in our courtroom, so we're going to fire the clerk. If you're firing a clerk and replacing that person with another clerk, you're not eliminating the position altogether. No, no, I said we don't want the clerk sitting in our courtroom anymore. We can do it ourselves with recording equipment. We're firing the clerk. But you're not. Is that legislative? Your Honor, you're not there firing a clerk per se. Why don't you answer the question before arguing with it? All right. Judge Fernandez, ask your question. No, and it's different. It is different. Okay. And how is that different? It is different because we are talking about eliminating an entire. Not to worry over here. It would never, never happen. We're talking about eliminating an entire position. That position will never be filled again. That is the same as Bogan. I think you misunderstood Judge Fernandez's question. The position is going to remain. The salary will be budgeted. But we're simply going to fire the person and replace her with a foot pedal. And whenever I hit the foot pedal, the clock resets. And when I hit the other foot pedal, it's never going to happen. Trust me. The recording equipment goes on. So the position is still there. The Administrative Office of the United States Courts still provides funding for the position. If we choose to hire somebody, the Congress of the United States continues to allocate funds for that position. We choose not to spend it. But that's precisely the point, Your Honor. Here, the position was eliminated. There is no longer an assistant magistrate position. When was it eliminated? The budgetary item is to allow funding for assistants, people who can help the presiding judge. She can determine whether it is to be outsourced entirely or whether to pro tem judges or whether there will be a city employee who gets benefits and who gets salary and who is supervised and who is hired and who is fired. There will no longer be that position. The entire position is outsourced. It's the same thing. The position was never eliminated. It was, Your Honor. It was eliminated. The budget just allows funding for assistants, people who can assist whether they are pro tem judges or whether it is a city employee. It's the city employee position. So that means that your client can never fire anybody. Whenever she fires somebody, she's being a legislator. No. If she fires and replaces, that's one thing. If she eliminates the position altogether, then it is like Bogan, where the entire position is eliminated. If she did fire and replace, she fired her and replaced her with pro tems. No. No, Your Honor. She restructured the court. She said we are no longer having any city employees. I'm sorry. You can call it restructuring. We used to do that, too, when I was in Washington. Oh, we're going to have a restructuring. And what that meant is 20 people were fired. We're going to have a restructuring. But Bogan deals precisely with that. When you are eliminating a city position, when you are eliminating a municipal position, then it is legislatively immune. It doesn't. If you take out what happens commonly in small municipalities, it's the city employees. I think we understand your argument. I don't think you're making much headway with me, but okay. Why don't you go ahead to your part. Your Honor, all right. You have a cross up to you. I mean, I think I've heard you say the same thing about six times. Even if you disagree, Your Honor. I'm not persuaded. Even if you disagree, Your Honor, with the legislative immunity, we were sandbagged. Because what happened is that we went into court having been told that this is what will be tried. What will be tried is that she was unable to attend budget meetings. She was slighted. She lost some hours for a short period of time. Look, what we said is we're not going to talk about her being fired, but we are going to talk about having her hours cut down to zero. For a short period of time before she was fired. Because the firing itself was legislatively immune. We go into court and the jury. I can see why you lost. You get too excited. The jury. You are too much. Too much passion for it. The trouble is the jury thought I lied. I came in and I say in my opening statement, not me, but my partner. You have to watch, sort of have this professional detachment. When I come in. Thank you, Your Honor. When I come in and tell the jury in my opening statement that this is a case in which very little happened. She was unable to attend a budget meeting. She says she was slighted. She says her hours were cut for a short period of time. And then what she is told, what the jury is told immediately is she received zero hours ever again. She lost her dream of being a judge. That is a very different case. And, of course, the jury says, you're lying to me. They turn around and say, why should I believe you? This is what happens at the trial. It's a sort of rough and tumble process and they make their best arguments and you make your best arguments. No. And the judge that. The judge, Your Honor, doesn't change the rules in the middle of the game. After saying, first, that all of this will be precluded. And then the second judge saying, I agree with the first judge. The orders in limine will stand. Go make your opening statement. This is your cross appeal? Yes, this is our cross appeal. Then we go into court and we have a very different situation. And the jury, of course, thinks we lied. We lose the benefit of immunity. We lose the benefit of, you know, there was even this testimony with respect to the change in the budget. That, in fact, she should have gotten a full-time position and she lost her dream of a full-time position. That's after. After we get the ruling in limine saying, no, it won't come in. And, of course, we lied. Let me ask you a question. We should have an entirely new trial. Assuming that we agree with opposing counsel that the firing was not covered by legislative immunity, then your complaint in the cross appeal essentially becomes no harm, no foul, right? I'm sorry, Your Honor? Let's say we agree with opposing counsel that the firing, I mean, her firing was not covered by legislative immunity. The very thing you've been arguing we shouldn't do. Yes. But let's say we do that anyway. Yes. If we make that decision, then your complaint about prejudice in the cross appeal becomes moot, right? No, by no means, because if you then go back and have a retrial on her being fired, we essentially are stuck with double damages because we think very much this jury already awarded damages against us for her being fired, for her receiving zero hours ever again. The fact of the lost wages, the most they could argue for by way of lost wages was $3,000. No, it was about $4,600. $6,500. It's actually about $4,600. But they awarded more than twice what they were told was the back she could get. They awarded $64,000 or $65,000. They awarded much more than that. I'm talking about the damages, the lost wage thing. Yes, Your Honor. But if they were told the most you can get is $3,000 and then, in fact, they come in and award $6,500. Were they instructed by the court there could only be $3,000? No. I'm talking about the closing argument, Your Honor. And then if they have $70,000 of emotional distress, that's not emotional distress from not being able to go to a budget meeting. That's emotional distress from losing the dream of being a judge. Emotional distress from never having a single hour of employment ever again. You don't know how stressful it is not to go to budget meetings. That doesn't mean to a normal juror that, oh, my gosh, I should award $70,000 of punitive damage. Well, we had the $100,000 of punitive damages on top of it. But just $70,000 even of pain and suffering, that's not the kind of thing that shows you what was being done. It also is illustrated by the fact that this was very much. Emphasized during the court. You recognize your client is not terribly sympathetic after the outburst she had about how, you know, I expect people not to snitch on me and I can't trust you anymore because you're such a snitch. Your Honor, the question is, is it more likely than not that this verdict was influenced? And I think if you look at the amount of the damages, if you look at the. Influenced by what? I'm sorry? Influenced by what? Influenced by the evidence that was not supposed to have come in. The evidence with respect to her being fired. The evidence with respect to her not getting a full-time position. None of that was supposed to have come in, and yet it came in nonetheless. She argued from it, and the jury made an award based on that. You know, sometimes these cases get over-lawyered and, you know, should have just tied the whole thing and you wouldn't have this problem right now. Well, now we do have the problem because we have two different rulings by two different judges, and it's the same case, and it puts us in a very difficult position. Is there any chance that you all could go to lunch and just settle this case? Well, Your Honor, I believe that there have been numerous efforts to try and settle, and no settlement is possible. The plaintiff is insisting that she wants even more. I find that when that happens, at least one side is being unrealistic about their chances of ultimate success. Sometimes both, but usually one side is more mistaken than the other, and that often happens because they don't really listen. They don't really hear what's going on. And sometimes plaintiffs just want the most of their due. You know, counsel could consider just going out and talking. That would be useful, Your Honor. Let me finally point out that with respect to the ---- You say it, but you don't sound like you mean it. I don't know whether Mr. Jellison and I can settle the case. I'm the appellate counsel here, not the trial counsel. I will urge my clients to go ahead and settle, and I hope that Mr. Jellison will urge his clients to settle. You didn't do such a great job. I'm sorry? Trial counsel didn't do such a great job. They don't want to get back in that courtroom. I think they were sandbagged because they came in to try a very different case than the judge who presided over the trial allowed them to have. Not sandbagged. Your Honor, I believe that that's exactly what happened. With respect to state law, we have two state law immunity statutes. They are cited in our briefs, and they do, in fact, encompass precisely this kind of determination. The state law statutes provide for legislative immunity, common law legislative immunity, which means that all motive and intent are out, along with any other kind of legislative immunity case. And there's also a statute with respect to public entity not being liable for acts or omissions, including the exercise of a judicial or legislative function, and anything that involves the determination of fundamental policy, which does include am I going to outsource to private entities or am I going to have an employee, and whether to seek, whether to provide resources for the hiring of personnel determination, whether and how to spend existing resources, including those allocated for facilities and personnel. All of that is within the scope of immunity under state law. So if your client just decided to go to pro tems but then after trying it for six months said, gee, this really doesn't work and I want to go back and have an assistant, then that would be all right. Just legislative action on her part. It would be legislative action on her part. That's certainly not what happened. No, but under your theory, that could happen. Well, and that's what happened in the first place. We've had it always pro tems. Now we're going to try it with an employee. The employee didn't work. We'll go back to pro tems and six months later we can go back to some other employee if we want to. To start a new employee, yes. She would still have a legislative determination because that's how to staff the court. It's always legislative. Yes, sir. So the only time you wouldn't have a legislative decision is if she got rid of one and then hired another one. Immediately to replace that person. Yes. That is, if in fact you are replacing that person. If you come up with a situation where something may be, you know, really an obvious farce of, all right, I'm going to go to pro tems and I go to pro tems for a week. Okay, now I'm going to go ahead and restaff the position. That's not what we have here. What we have is pro tems. We're going to try the employee. We try the employee for a period of about half a year and then we go back. Then she turned out to be a snitch. What? Then she turned out to be a snitch. Never happened. Well, what happened was that this was a person who was formerly on the council and from my client's point of view the way she was handling this was to keep trying to undercut Judge Stringer and to get herself replaced in Judge Stringer's job. That was Judge Stringer's belief. That was Judge Stringer's expectation and understanding of the situation. But the motive doesn't matter. Legislative action. Whatever the motive. Whatever the motive, as long as it's part and parcel of a restructuring of the court. It definitely was that, yes. I'm sorry? We're all in agreement on that. It was restructuring of the court, yes. I'm sorry, I believe it was a restructuring of the court. We don't disagree. Okay. It's a restructuring and because of that, because you're replacing. Give me 30 seconds. Your Honor, again, even if the court disagrees with us with respect to the termination as part of a restructuring of the court, we need a full retrial so that we don't get stuck with double damages for the firing of this person. And that's exactly what we will have. Thank you. It's a bold prediction. I'm sorry? It's a bold prediction. I hope not. A settlement avoids all uncertainty of what those judges will do. You know how Judge Sedgwick said one thing and Judge Rosenblatt said something else? Judge Rosenblatt? I don't know what those judges on the court of appeals will say. Trouble is Judge Rosenblatt said, I'm following Judge Sedgwick, and then did something exactly else. I'm just telling you how unpredictable this process is. The thing about a settlement is it does away with all uncertainty. And sometimes plaintiffs just want every last dollar they could possibly get and are unwilling to settle until they have every jury trial and every last dollar and are just unwilling to settle with a city on any grounds short of that, and that's what I think we're faced with, unfortunately. No matter what we try. Okay. Is that your position that you won't settle for anything except every last penny that the city has? That was a pretty bold statement. I've never dealt with Ms. Freeman on this case. I've dealt with Mr. Cohen and Mr. Foster, and we have had discussions and pretty healthy ones. Have you settled other matters with them? No. In this case, I've had discussions with the trial counsel. Have you settled any other matters with the city? This is the only matter I have with the city, have ever had with the city. I'm concerned in this case that the facts of the case were not viewed by District Judge Sedgwick and by the defendants in the light most favorable to my client. This was a summary judgment decision, and that's what should be done. And when I hear Judge Stringer being called a legislator, I think to myself, then why is this position, why was it created by the city council? Why can it only be taken out of the budget by the city council? Why does the city council have to approve where money goes? Viewed in the light most favorable to us, the city council is the legislative body and not just Judge Stringer, albeit she is the supervisor of her department. And when I look at her withdrawal, the full-time position, I say to myself the same thing. What is the evidence that she engaged in the legislative process just because she says that as the ---- Well, you say that she did at one point, but it was at the firing that she ceased to do it. She didn't follow the same practice. I've never conceded or believed she made an act within the city's legislative process. At any time? At any time. She withdrew that full-time position. In fact, if you look at the record, Your Honor, there really is no explanation of when it occurred, how it occurred. There's no documentation of it. It just happened at some point in time that we don't know and in a way that we don't know. And how do you jump to the conclusion, viewing the facts most favorable to my side, that that has the hallmarks of legislation or that it is the legislative process? And even counsel said that if it's an obvious farce, it shouldn't be covered by legislative immunity. If we look at the facts of this case, isn't Judge Stringer's comment that she did things because of a budget or because of restructuring, isn't that, exactly that, an obvious farce? On the issue of termination, I looked at the record preparing for this real closely, obviously with the briefs. I did not mention termination until we got to a meeting on November 21, 2003, with the judge as the defendants were about to begin their case. And Mr. Cohen said he was going to raise the issue of when the termination occurred because they didn't want to pay for the zero-hour cut. They didn't ask Judge Sedgwick to rule on that. That was a damage issue for the trial. And because they didn't bother to ask for summary judgment, it became a fact issue for the jury. But the comment on termination did not occur until they opened the door. I was careful about that. Thank you. Okay. So you think that you and Ms. Freeman can have a cup of coffee? I would be happy to meet with Ms. Freeman. Maybe you can have a cup of coffee and, you know, you can digest what was said here. You know, the arguments become available online or by tape. I forget now what the process is. Very quickly, and I think it would be very useful for you all to think back on the questions you heard and the comments you heard. And really, this is the kind of case that reasonable lawyers should be able to settle after you've heard all you've heard. Okay? I understand and agree. If you are in the process of settlement, send us a letter in the next seven days telling us not to decide the case. Otherwise, we will go ahead and, I mean, the case is already submitted and we'll proceed to do what we do. But if you are really seriously working on a settlement, you want to advise us so we don't move forward with the decision. But absent hearing from you, the case is submitted, and we are going to go forward with our processes. Thank you. Thank you. Thank you.
judges: Beezer, Kozinski, Hatter